COFFMAN *v.* MCKEE.

Opinion delivered February 4, 1918.

CORPORATIONS—STOCKHOLDERS—CONTRACTS.—Certain persons secured an option to purchase certain coal lands, and promoters contracted to organize a corporation to buy such lands at an advance, which they proceeded to do; thereafter the promotors sent a circular letter to the subscribers stating that the option holders had agreed that if the project proceeded, and if the lands sold for less than $35 per acre, that the subscribers should be paid in preference to the option holders. *Held,* a decree distributing the proceeds of

a sale of the company's property should subject the stock of the cash holders to its *pro rata* part of the indebtedness of the corporation, the preference agreement being in operation only if the lands sold for less than $35 per acre, and the cash holders not being exempted from liability for debts.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Sellers & Sellers,* for appellant.

The modification asked should have been made. 127 Ark. 28.

*Lee Miles,* for appellees.

The decree is right; the modification should be denied. 127 Ark. 28.

SMITH, J. The parties to this litigation are stockholders in the Arkansas Anthracite Coal Company, a domestic corporation, and the question at issue is the extent to which the stock of appellees is preferred over that of appellants. The corporation was organized to acquire certain coal lands, but before the purchase of these lands, certain of the subscribers for the corporation's stock became dissatisfied, whereupon a circular letter was prepared by Messrs. Remmel and Rose, of Little Rock, who were interested in promoting the corporation, and mailed to these stockholders. This letter satisfied the disaffected stockholders, and the lands were acquired by the corporation. The letter reads as follows: "We are glad to tell you that we have been able to procure from the holders of options the following concessions:

"June 12, 1905. To the cash subscribers to the stock of the Arkansas Anthracite Company: It has been suggested that if the 10,000 acres which you contemplate acquiring should be sold for less than $350,000, we would still make something while you would lose money. To show our confidence in the enterprise, we agree that if you will go on and acquire 9,000 or more acres of the land under our options and said lands should sell for less than $35 per acre, you may first be repaid all the money that

you pay in on your subscription, leaving only the residue to us.

"It has been suggested that if the property were sold at less than $35 per acre, we would still make a profit on our investment, by reason of the stock which is given us by the option holders in payment for our services. Such an idea has not occurred to us; but as it has occurred to others, we will say that if the property is sold for less than $35 an acre, you will first be repaid out of the proceeds of the sale the sums paid in by you before anything is paid us on the stock received by us from the option holders for our services aforesaid."

This letter was construed by this court in the case of *Coffman et al.* v. *McKee et al.,* 127 Ark. 28, 191 S. W. 402, where we held that the letter was contractual, as it had been acted upon by the persons to whom it was addressed and had accomplished the purpose for which it was written. It was stated in that opinion that the corporation had acquired about 15,000 acres of land, and had incurred an indebtedness of about $100,000, and reference is now made to that opinion for a fuller statement of the facts.

In that opinion we construed the letter as follows: "The agreement contemplated that if the lands should be sold for more than $35 per acre, that the option holders and Messrs. Remmel and Rose should be entitled to share ratably in the distribution of the assets of the company. The decree of the chancellor makes the shares of stock held by the option holders and by Messrs. Remmel and Rose under their agreement with the option holders bear the whole indebtedness of the corporation. This was error. The shares of stock owned by the cash subscribers and the shares issued to the option holders and to Messrs. Remmel and Rose under their agreement with the option holders should bear ratably the debts of the company, and the balance should be distributed ratably between them if the lands are sold for more than $35 per acre."

The cause was remanded with directions to enter a decree in accordance with the opinion, and the court entered the decree set out below. Appellants asked the court to modify this decree by inserting the phrase which we enclose in parenthesis:

"That after payment of the debts of the company each of the aforesaid cash stockholders shall receive from the proceeds of the sale of the property of said company the par value of his said cash stock (less its *pro rata* part of the indebtedness of said corporation), provided said property shall sell for less than $35 per acre. Any residue remaining after the payment of said indebtedness and the par value of the cash stock less its proportionate part of the indebtedness shall be distributed as follows: To the option stockholders a sum equal in per cent. to the per cent. paid to the cash subscribers under this decree as above provided. Any residue remaining shall be paid to all stockholders in said corporation ratably."

The court refused to so modify the decree, and this appeal has been prosecuted to review that action.

In our opinion, the decree should have been modified as requested. But for the letter set out above, none of the stockholders would have any preferential rights over any other stockholder. Such right of preference as exists is created by the letter. If nothing to the contrary appears in the letter, all stock would be liable ratably for the debts of the corporation. The letter makes no reference whatever to the debts of the corporation. It merely guarantees to the stockholders to whom it was addressed that the lands should bring, if sold, as much as $35 per acre, and agrees that, if the property is sold for a less sum, these preferred stockholders shall be first repaid out of the proceeds of the sale, and that they shall receive the sums paid in by them to the extent of $35 an acre before anything is paid on the stock received by Remmel and Rose and by the other stockholders in whose behalf the letter was written. It was not recited in the letter that they should be settled with on a basis of $35 per acre,

less the debts of the corporation, and the letter only guaranteed to them a preferential settlement if the land sold for less than $35 per acre. The decree, therefore, should have been modified as requested, and the cause will be remanded with directions to that effect.